# In the United States Court of Federal Claims

No. 23-800C
(Filed: January 23, 2024)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JOSHUA J. ANGEL, | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Joshua J. Angel, New York, NY, for plaintiff.

Anthony F. Schiavetti, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Senior Judge

In this suit, plaintiff Joshua J. Angel asserts his own claims and those of a putative class against the United States. His claims are founded on the dividend rights of shareholders of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), or collectively, "the Enterprises." Defendant, relying on Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), moved to dismiss his claims for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.

Mr. Angel then moved to obtain jurisdictional discovery to bolster his arguments against the dismissal of his claims. The court stayed the briefing of defendant's motion to consider Mr. Angel's request for discovery. Mr. Angel's motion is now fully briefed. As explained more fully below, the court denies Mr. Angel's request because the discovery he seeks is irrelevant to the resolution of defendant's motion.

## I. BACKGROUND

### A. Fannie Mae and Freddie Mac Shareholders Stop Receiving Dividends

Mr. Angel, like many other plaintiffs who filed claims in this court, seeks compensation for changes to the benefits of owning stock in Fannie Mae and Freddie Mac that occurred in the

context of a government rescue of the Enterprises.[1]  The United States Court of Appeals for the Federal Circuit ("Federal Circuit") addressed many of these claims in Fairholme Funds, Inc. v. United States, 26 F.4th 1274 (Fed. Cir. 2022), cert. denied, 143 S. Ct. 563, and cert. denied sub nom. Barrett v. United States, 143 S. Ct. 562, and cert. denied sub nom. Owl Creek Asia I, L.P. v. United States, 143 S. Ct. 563, and cert. denied sub nom. Cacciapalle v. United States, 143 S. Ct. 563 (2023).  As recounted by the Federal Circuit in that opinion:

> The Enterprises suffered devastating financial losses in 2008 when the national housing market collapsed.  In response, Congress enacted the Housing and Economic Recovery Act of 2008 (HERA).  HERA created the Federal Housing Finance Agency (FHFA), an independent agency tasked with regulating the Enterprises and (if necessary) stepping in as conservator or receiver.  12 U.S.C. §§ 4511, 4617.  HERA also contains a Succession Clause, which states that the FHFA "shall, as conservator or receiver . . . immediately succeed to [ ] all rights, titles, powers, and privileges of the [Enterprises], and of any stockholder . . . with respect to the [Enterprises] and the assets of the [Enterprises]."  Id. § 4617(b)(2)(A)(i).
>
> With the consent of the Enterprises' boards of directors, the FHFA's Director placed the Enterprises into conservatorship in September 2008.  The FHFA Director then negotiated preferred stock purchase agreements (PSPAs) with the Department of Treasury (Treasury) in which Treasury agreed to allow the Enterprises to draw up to $100 billion in capital in exchange for:  (1) senior preferred non-voting stock having quarterly fixed-rate dividends and an initial liquidation preference of $1 billion and (2) warrants to purchase up to 79.9% of the common stock of each Enterprise at a nominal price.
>
> FHFA and Treasury amended the terms of the original PSPAs in the years that followed. . . .  [The Third Amendment implemented] a "net worth sweep" under the PSPAs[, which] replaced the fixed-rate dividend formula with a variable one that required the Enterprises to make quarterly payments equal to their entire net worth, minus a small capital reserve amount.  The net worth sweep caused the Enterprises to transfer most, if not all, of their equity to Treasury, leaving no residual value that could be distributed to shareholders.

Id. at 1282-83 (alterations in first paragraph in original) (citations to appellate joint appendix omitted).  The Third Amendment to the PSPAs was adopted on August 17, 2012.  Compl. ¶ 10.

### B.  Fannie Mae and Freddie Mac Shareholders File Numerous Suits

As noted by the Federal Circuit, "[s]hareholders launched a series of challenges to the net worth sweep that have worked their way through several fora, including the [United States Court

---

[1]  The facts recounted in this section are derived from the complaint and matters of which the court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.

of Appeals for the District of Columbia Circuit ("D.C. Circuit")] and the [United States] Supreme Court." Fairholme, 26 F.4th at 1283.  In addition, "[p]arallel to these unsuccessful attempts to undo the net worth sweep, shareholders filed complaints with the [United States Court of Federal Claims ("Court of Federal Claims")]." Id.  Many of the suits in this court were filed in 2013 or 2014, within six years of the Enterprises entering the conservatorships.  See, e.g., Wash. Fed. v. United States, 149 Fed. Cl. 281, 287, 297 (2020) (dismissing suit, filed in 2013, for compensation based on the conservatorships imposed by FHFA), aff'd, 26 F.4th 1253 (Fed. Cir. 2022); Cacciapalle v. United States, 148 Fed. Cl. 745, 754, 781 (2020) (dismissing suit, filed in 2013, for compensation based on the net worth sweep), aff'd sub nom. Fairholme, 26 F.4th at 1274.  A second wave of suits was filed when almost six years had passed since the net worth sweep was implemented.  See, e.g., Owl Creek Asia I, L.P. v. United States, 148 Fed. Cl. 614, 622, 646 (2020) (dismissing suit, filed in 2018, for compensation based on the net worth sweep), aff'd sub nom. Fairholme, 26 F.4th at 1274.  In the appeals before it, the Federal Circuit ruled that shareholder claims based on the net worth sweep could not proceed in this court.  See Fairholme, 26 F.4th at 1282 (resolving eight appeals of decisions of this court in one opinion).

## C.  Mr. Angel Files His First Two Suits Related to His Fannie Mae and Freddie Mac Stock

In 2018, proceeding pro se, Mr. Angel filed suit in the United States District Court for the District of Columbia ("District Court") alleging that the Third Amendment was a breach of contract and a breach of the implied covenant of good faith and fair dealing.  See Angel v. Fed. Home Loan Mortg. Corp., No. CV 18-1142, 2019 WL 1060805, at *1-2 (D.D.C. Mar. 6, 2019) (noting that Mr. Angel brought claims for breach of contract, breach of the implied covenant, and tortious interference, but abandoned the third claim), aff'd, 815 F. App'x 566 (D.C. Cir. 2020). The District Court dismissed Mr. Angel's claims related to the net worth sweep as untimely because they were barred under state law by statutes of limitation that require that suits be filed within either three or five years of the accrual of the claim. Id. at *2-7.  The District Court then denied Mr. Angel's motion for leave to amend his complaint.  Angel v. Fed. Home Loan Mortg. Corp., No. CV 18-1142, 2019 WL 11320986, at *1 (D.D.C. May 24, 2019), aff'd, 815 F. App'x at 566.  The D.C. Circuit affirmed both of those decisions in a single, unpublished opinion.  See Angel, 815 F. App'x at 569-70 ("There are no other facts consistent with Angel's complaint that would make his claims, which accrued upon the adoption of the Third Amendment in 2012, timely.").  That decision issued on April 24, 2020.

Less than two months later, again proceeding pro se, Mr. Angel filed suit in this court. As in the District Court, he alleged that the implementation of the net worth sweep was a breach of contract and a breach of the implied covenant of good faith and fair dealing.  Compl. ¶¶ 10-17, 40, 50-51, 55, Angel v. United States ("Angel I"), No. 20-737C (Fed. Cl. June 12, 2020).  On August 4, 2022, Mr. Angel, who was no longer proceeding pro se but as an attorney admitted to the bar of this court, voluntarily dismissed the action.

## D.  Mr. Angel Files Two More Suits Based on the Same Underlying Facts

Four days after that voluntary dismissal, Mr. Angel filed a second complaint in this court rehashing the same facts as his prior suits and modifying, slightly, his theories of recovery.  See

generally Compl., Angel v. United States ("Angel II"), No. 22-867C (Fed. Cl. Aug. 8, 2022). The court dismissed that action on May 12, 2023, Angel v. United States, 165 Fed. Cl. 453 (2023), and judgment was entered on May 15, 2023.  Less than one month later, Mr. Angel filed the complaint in this matter.

The claims asserted by Mr. Angel in his complaint are founded on his dividend rights, as a holder of Junior Preferred shares in Fannie Mae and Freddie Mac, and on the fact that no dividends were declared or paid to holders of Junior Preferred shares from January 1, 2013, to the date his complaint was filed, June 1, 2023.  Compl. ¶¶ 16-19.  Mr. Angel represents that he "owns Junior Preferred Shares of both Fannie Mae and Freddie Mac, purchased after [the] Third Amendment enactment, in [an] amount in excess of $1 million face amount [sic]."  Id. ¶ 46.

Mr. Angel's claims are set forth in five counts.  In Count I, Mr. Angel alleges that the United States breached a contract, or contracts, with him on a quarterly basis, because his right to quarterly dividends was established by contract.  Id. ¶¶ 70-74.  In Count II, labeled "Illegal Extraction," Mr. Angel alleges that Treasury committed wrongful acts in conducting the net worth sweep, and/or the conservator for each of the Enterprises breached its fiduciary duty to the shareholders.[2]  Id. ¶¶ 76-80.  In Count III, Mr. Angel, relying in part on bankruptcy law, seeks a declaratory judgment that his dividend rights must be retroactively restored at the end of the conservatorships of the Enterprises.  Id. ¶¶ 82-89.  In Count IV, Mr. Angel alleges that he had a settlement agreement with the United States to resolve the claims presented in Angel I, and that the United States breached that agreement.  Id. ¶¶ 91-95.  In Count V, Mr. Angel seeks a declaratory judgment that the United States committed to an "implicit guarantee" of his dividends from the Enterprises.  Id. ¶¶ 97-103.

### E.  Defendant's Motion to Dismiss

Defendant moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted.  As to Counts I, II, and V of the complaint, defendant contends both that these claims are untimely and that they are barred by the doctrine of issue preclusion.  For Count III, defendant argues that this claim sounds in bankruptcy law over which this court lacks jurisdiction, and also argues that the claim cannot proceed because this court

---

[2]  Mr. Angel's claim in Count II is difficult to define with any precision.  In his discovery motion, Mr. Angel summarizes this claim:

Plaintiff alleges that Defendant Treasury engaged in wrongful acts of illegal exaction/extraction in conducting the Conservatorship[s] of the [Enterprises] by causing their [boards of directors] to disregard the contractual payment rights of Junior Preferred shareholders in [the] Third Amendment Net Worth Sweep misapplication.  These wrongful quarterly breaches of Plaintiff's contract rights resulted in wrongful quarterly illegal exactions/extractions [of] $58 billion [in] Illegal Takings.

Pl.'s Mot. 26 (footnote omitted).

does not have the power to provide prospective declaratory relief.  Regarding Count IV, defendant argues that there is no plausibility to Mr. Angel's claim that the United States entered into and then breached a settlement agreement with him.

In addition to those principal arguments, defendant presents other challenges to the claims in the complaint.  Defendant compares many of the claims that might be discerned in the complaint, such as claims for illegal exaction or breach of fiduciary duty, to claims rejected by the Federal Circuit in its <u>Fairholme</u> decision, and requests that the court follow that precedent.  Defendant also contends that any contract claims asserted in Counts I, II, and V are implausible.  Finally, defendant argues that Mr. Angel's implied-guarantee claim in Count V fails because it, too, is a claim for declaratory relief that this court cannot provide.

## F.  Mr. Angel's Motion Requesting Discovery

In response to defendant's motion to dismiss, Mr. Angel filed a motion to obtain jurisdictional discovery.  He seeks, to cite some examples, administrative logs from Treasury, FHFA, and the United States Department of Justice ("Justice"); "working papers" from the Federal Reserve System; press releases from Treasury and Justice; board minutes from the Enterprises; and "[d]ocuments and communications between and among Treasury, FHFA, and other Government agencies and officials."  Pl.'s Mot. 27-29.  According to Mr. Angel, he is entitled to discovery because defendant "disputed several of the material factual allegations of Plaintiff's complaint and has otherwise relied upon factual assertions that are not reflected in (and are inconsistent with) Plaintiff's complaint."  <u>Id.</u> at 3.  Mr. Angel further asserts that "[a] party is entitled to jurisdictional discovery so long as it can establish that the evidence sought is 'relevant' to the disputed question of jurisdictional fact."  <u>Id.</u> at 24-25 (citing <u>Burnside-Ott Aviation Training Ctr., Inc. v. United States</u>, 985 F.2d 1574, 1582 (Fed. Cir. 1993)).

According to Mr. Angel, the parties' disputes of fact, jurisdictional and nonjurisdictional, justify a period of discovery before the court rules on defendant's motion to dismiss:

> Although a motion to dismiss should only challenge the legal sufficiency of the complaint, the Government's motion to dismiss amounts to a counter-statement of facts that disputes many of the material allegations of Plaintiff's complaint.  The Government then relies upon its own factual allegations to argue that the Court lacks jurisdiction over the complaint and that the complaint fails to state a claim.  Specifically, the Government's counter-statements of fact are relevant to its arguments that (1) Plaintiff's claims are not ripe, (2) this Court lacks jurisdiction over FHFA, and (3) Plaintiff has failed to state a claim for a taking.  Although Plaintiff does not concede the materiality of the Government's factual allegations, the Government relies on its factual claims to support its legal arguments.  Plaintiff therefore must be entitled to discovery to refute those factual claims.

<u>Id.</u> at 24; <u>see also</u> <u>id.</u> at 3 ("The question thus presented here is whether the Court should suspend proceedings relating to the Defendant's Motion to Dismiss, so that Plaintiff can conduct the

discovery needed to uncover the facts essential to an informed resolution of the [motion to dismiss] as filed, including, but not limited to, jurisdictional discovery?")

In response, defendant argues, generally, that "the purported factual disputes that Mr. Angel cites are illusory, irrelevant to the grounds for dismissal, or both." Def.'s Resp. 2. In defendant's view, "there are no jurisdictional facts in dispute and discovery is not necessary to resolve the legal sufficiency of his claims." Id. On the topic of contract formation, in particular, defendant contends that Mr. Angel's legal conclusions are flawed even if the facts alleged in the complaint are assumed to be true:

> His allegations that such contracts exist are not factual allegations; they are legal assertions that must, even at this stage, be supported by plausible factual assertions that, if proven, would establish the elements of such a contract. Our motion to dismiss demonstrates that such plausible allegations are lacking—but this demonstration does not rely on any factual dispute.

Id. at 10. Moreover, even if some disputes of fact might be discerned in the government's RCFC 12(b)(6) arguments, as Mr. Angel contends, defendant suggests that the court can simply assume that the well-pled facts alleged in the complaint are true. See id. at 13 (stating that "Mr. Angel is still not entitled to discovery [because] the Court should assume all well-pleaded allegations in the complaint [are] true and decide the motion [to dismiss] accordingly" (citing RCFC 12(d))). Defendant also faults Mr. Angel for seeking "broad ranging discovery of every type . . . without clearly identifying what he plausibly expects to discover or its relevance." Id. at 2.

Mr. Angel renews his request for discovery in his reply brief. In the heading for the two-paragraph argument section of the brief, Mr. Angel asserts that he has "[a]rticulated with [s]pecificity his [e]ntitlement to [p]re-[m]otion [d]iscovery" and suggests that discovery is needed to refute both the factual claims and the claims of insufficiency and implausibility made in defendant's motion to dismiss. Pl.'s Reply 1. Then, in the text under that heading, Mr. Angel maintains that the discovery he requests is reasonably aimed at obtaining "non-public information concerning each of the factual allegations in the [complaint] that the Government claims . . . is either insufficient or implausible." Id.

Mr. Angel also contends, curiously, that defendant "essentially conceded" the relevance of the jurisdictional discovery he requests. Id. The court finds no such concession in defendant's response brief.

Briefing is now complete and neither party requested oral argument. Mr. Angel's motion for discovery is thus ripe for resolution.

## II. LEGAL STANDARD

The rationale for permitting a plaintiff to obtain discovery to oppose a motion to dismiss is that, in some cases, facts need to be exposed for the court to make a jurisdictional ruling. See, e.g., Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13 (1978) (noting that "where

issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues").  Limited jurisdictional discovery is warranted when it is "clearly . . . relevant to the existence of subject matter jurisdiction."  DDB Techs., L.L.C. v. MLB Advanced Media, L.P., 517 F.3d 1284, 1292 (Fed. Cir. 2008).  However, a request for jurisdictional and other discovery must be denied if the issues raised by a motion to dismiss brought under RCFC 12(b)(1) and RCFC 12(b)(6) "implicate legal questions for which no fact discovery [i]s required."  Harris v. United States, 868 F.3d 1376, 1378 (Fed. Cir. 2017).  The critical test is whether the requested discovery is relevant to the challenges raised by the United States in its motion to dismiss.  See, e.g., Harlem Globetrotters Int'l, Inc. v. United States, 168 Fed. Cl. 31, 42 (2023) (denying a discovery request from a plaintiff facing an RCFC 12(b)(6) motion to dismiss because the items sought to support a claim for breach of contract were not "material to the question of whether the [federal agency] had any intent to contract with" the plaintiff); Hopi Tribe v. United States, 113 Fed. Cl. 43, 50 (2013) (denying a discovery request as to the degree of federal control over the tribe's water resources because "those facts [we]re irrelevant" to the jurisdictional question of whether the United States owed a specific trust duty to the tribe), aff'd, 782 F.3d 662 (Fed. Cir. 2015).  Stated another way, if the court's resolution of the challenges to the complaint could not conceivably be altered by the requested discovery, the request should be denied.  See, e.g., Hopi Tribe, 782 F.3d at 670 ("[T]he Court of Federal Claims properly denied the Hopi Tribe's request for jurisdictional discovery relating to the United States' control over water resources on the reservation.  Further evidence of actual control would not change the jurisdictional analysis."); Lea v. United States, 120 Fed. Cl. 440, 444-45 (2015) (denying a request for jurisdictional discovery because the plaintiff's allegations regarding the involvement of the United States in the activities of a bank, even if factually supported, would not prevent the court's dismissal of the plaintiff's claims on jurisdictional grounds).

### III.  ANALYSIS

For its analysis, the court will pair defendant's challenges to the claims in the complaint with Mr. Angel's specific justifications for obtaining discovery to determine whether the requested discovery is relevant to those challenges.  As a threshold matter, however, the court addresses two of Mr. Angel's contentions as to the proper test to apply to his discovery requests.  First, Mr. Angel argues that "[w]hen the jurisdictional and merits arguments are intertwined, this Court should defer decision on the motion to dismiss for lack of jurisdiction until the completion of full discovery, and only then decide both the jurisdictional and merits arguments."  Pl.'s Mot. 31.  Here, Mr. Angel's premise is flawed.  As in Harris, defendant raises separate and distinct arguments under RCFC 12(b)(1) and RCFC 12(b)(6) that are not intertwined.  The authorities referenced by Mr. Angel regarding intertwined jurisdictional and merits arguments are therefore inapposite.

Second, Mr. Angel contends that the standard of review for resolving motions for discovery to resist summary judgment, under RCFC 56(d), is applicable to his motion as well.  Id. at 25 (citing a five-part test in Theisen Vending Co. v. United States, 58 Fed. Cl. 194, 198 (2003)).  Defendant addresses the RCFC 56(d) standard proposed by Mr. Angel in its response brief and rejects it:

> RCFC 56(d) . . . is applicable to motions for summary judgment, not a motion to dismiss. Mr. Angel makes no attempt to demonstrate that our motion to dismiss relies on materials outside the pleadings and should be converted into a motion for summary judgment. Nor could he, as we did not rely on such materials.

Def.'s Resp. 12 (citations to Mr. Angel's motion omitted). Even Mr. Angel acknowledges that "the question of whether the defendant is entitled to summary judgment . . . is not the question now before this Court." Pl.'s Mot. 21 (footnote omitted). The court agrees with defendant that, in light of the arguments for dismissal presented in its motion, RCFC 56(d) has no applicability to Mr. Angel's request for discovery.

The court turns now to plaintiff's discovery requests and considers them under the standard appropriate here.

## A. Discovery to Rebut Challenges to Counts I, II, and V

In Counts I, II, and V of his complaint, Mr. Angel alleges, respectively, and with varying degrees of clarity, quarterly breaches of contract, illegal extractions of money from the Enterprises and their shareholders, and the violation of an implied guarantee by the United States of dividend payments to the shareholders. Defendant's primary challenges to Counts I, II, and V are that these claims are barred by the court's six-year statute of limitations, 28 U.S.C. § 2501, and by the doctrine of issue preclusion. The essence of Mr. Angel's arguments that directly address defendant's limitations challenge is summarized in two paragraphs of his motion:

> If, as the Plaintiff alleges, the facts are that the Government each quarter took action to prevent the [Enterprises'] boards of directors from declaring dividends, such quarterly actions would be inconsistent with, and undermine the Government's assertion that the words of the Third Amendment should be construed as having terminating [sic] Plaintiff's contractual dividend rights. Plaintiff should be [e]ntitled to jurisdictional discovery on this issue[.]

> Indeed, the existence of the required quarterly calculation of profits demonstrates that contrary to Defendant's factual contention each quarterly claim is different, involving different conduct, a different calculation and a different amount of money. Jurisdictional discovery will allow the Plaintiff to obtain additional factual support that his claim did not accrue when the Third Amendment was adopted.

Pl.'s Mot. 19.

Defendant's first response to this request for discovery is that it is based, at least in part, on an illusory dispute: "[We] have made no argument that the Third Amendment ended all junior preferred contract dividend rights." Def.'s Resp. 8. Mr. Angel, in his motion and in his reply brief, has not identified where or when defendant might have made such an assertion. Indeed, the court finds no basis for Mr. Angel's contention in this regard. Consequently, Mr.

-8-

Angel's first rationale for obtaining discovery on the limitations issue is nonsensical and without merit.

Defendant then advances several other arguments in opposition to Mr. Angel's request to obtain discovery that might conceivably establish that his claims in Counts I, II, and V accrued within the six-year limitations window. It asserts that binding precedent forecloses contract claims against the United States, such as those found in Count I, in the context of the conservatorships of the Enterprises. Id. (citing Fairholme, 26 F.4th at 1293-96). Further, it contends that discovery would not alter this court's previous accrual analysis, where claims indistinguishable from those presented in Counts I, II, and V were found to be time-barred. Id. (citing Angel II, 165 Fed. Cl. at 465-66). Finally, it argues that the request for discovery regarding the alleged quarterly instructions to the Enterprises lacks a factual basis that meets the minimum threshold for opening the door to discovery. See id. at 9 ("Mr. Angel's unsupported bare allegations do not justify the costly and time-consuming discovery he seeks."). Mr. Angel did not address any of these arguments in his reply brief.

The court agrees with defendant that Mr. Angel's request for discovery as a means for uncovering facts pertinent to the court's claim accrual analysis should be denied. It cannot conceive how, in light of the precedent of Fairholme and its own accrual analysis in Angel II, the discovery requested by Mr. Angel would alter its ruling on the limitations issue. Moreover, because there is no identified basis in fact for a speculative search for improper communications with the boards of the Enterprises, Mr. Angel's request for discovery is unwarranted. See Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1326 (Fed. Cir. 1990) (stating that information requested in discovery "is not relevant . . . if the inquiry is based on the party's mere suspicion or speculation"). For these reasons, Mr. Angel's proposed discovery has no relevance to the limitations analysis for his claims in Counts I, II, and V.

As for the doctrine of issue preclusion, Mr. Angel, in his motion, does not specifically tie any of the discovery he requests to this topic, despite the importance of this challenge to Counts I, II, and V. Thus, Mr. Angel has failed to identify any rationale for requesting discovery to counter a defense of issue preclusion. The discovery he seeks is therefore irrelevant to this topic.

The only remaining question, then, is whether the discovery sought by Mr. Angel might assist him in defending against the charge that the claims in these three counts are implausible. See Pl.'s Mot. 21 (stating that the question before the court is whether Mr. Angel should be allowed "to conduct discovery before the Court grants Defendant's motion to dismiss [so that he can access] the facts that he needs to convert allegedly implausible allegations of fact into well pleaded allegations of fact presumed true for purposes of a motion to dismiss"). Mr. Angel identifies three general areas of inquiry for his discovery requests. First, he asserts that the United States would not let the Enterprises fail, that "the effect of the Government's implicit guaranty of [the Enterprises'] securities on the market was the driving force behind the conservatorships," that "the adoption of HERA was the Government's response to prevent the [Enterprises] from plunging into default," and that these topics "should be the subject of jurisdictional discovery." Id. at 7-8. Second, he states his belief that Treasury, "commencing first quarter 2013 to date, . . . instructed the [Enterprises'] directors not to seek Treasury's

consent to declare dividends to the holders of Junior Preferred Shares, essentially exacting $22 billion in Junior Preferred Share dividend entitlements." Id. at 13.  In his view, he should be allowed to confirm his suspicions:

> The Government is certain to be in possession of any such Treasury quarterly communications to the [Enterprises'] directors regarding dividends[.] Plaintiff should be afforded the opportunity to serve interrogatories, take depositions, and request the production of those documents relevant to this factual dispute.  This information is solely in the hands of the Government, and it is not otherwise publicly available.

Id. at 20.  Third, Mr. Angel seeks discovery regarding the amount of litigation proceeds that were taken from the Enterprises during the conservatorships pursuant to the net worth sweep.  Id. at 12-15 & nn.8-9, 26 n.23, 29.

 Mr. Angel's requested discovery would not improve the plausibility of his claims in Counts I, II, and V, however.  Mr. Angel's legal conclusion that the shareholders of the Enterprises entered into contracts with the United States is implausible because the publicly available statements he references do not contain offers or guarantees from the United States that would support his right to recovery.  See Angel II, 165 Fed. Cl. at 468 ("Mr. Angel has not identified any statement from Treasury officials constituting an unambiguous offer of a dividend guarantee or a promise of noninterference in the actions of the boards of the Enterprises.").  The nonpublic statements or actions that Mr. Angel seeks to uncover in discovery have no bearing on a critical element of contract formation—an unambiguous offer by the United States—that is required for a plausible contract claim.  See id. (dismissing a contract claim brought by Mr. Angel "[b]ecause the government's offer to enter into an implied-in-fact contract must be 'unambiguous'" (citing Fairholme, 26 F.4th at 1293)).  Mr. Angel's contract claims, and any claim for illegal exaction or breach of fiduciary duty that might be discerned in Counts I, II, and V, are also implausible in light of the precedent of Fairholme rejecting similar claims.  See 26 F.4th at 1288-99 (affirming the dismissal of breach-of-contract, illegal-exaction, and breach-of-fiduciary-duty claims related to the net worth sweep).  In short, the discovery requested by Mr. Angel would do nothing to render these claims more plausible and it would be immaterial to the court's resolution of defendant's motion to dismiss.

Furthermore, the plausibility of the implied-guarantee claim in Count V, in particular, would not be improved by the discovery Mr. Angel seeks.  He asserts that several federal agencies, including "Treasury, the Federal Reserve System, [and] the Federal Housing Finance Administration . . . possess non-public information concerning each of the factual allegations in the . . . Complaint that the Government claims . . . is either insufficient or implausible."  Pl.'s Reply 1.  However, an offer to guarantee dividends would have needed to have been made in public statements, not in nonpublic documents.  See Def.'s Resp. 11 ("Mr. Angel fails to demonstrate how any discovery he might seek would demonstrate the existence of . . . a meeting of the minds [as to a guarantee of dividends].");  cf. Pl.'s Mot. 6 ("The Implicit Guaranty is an implied-in-fact contract, created by the words and conduct of the federal government guaranteeing the timely payment of the [Enterprises'] legal obligations.").  Internal discussions

-10-

within federal agencies that might have contemplated a guarantee of the Enterprises' dividends have no bearing on the question of whether the United States actually entered into a contract to provide such a guarantee. Such a contract would exist only if there were a meeting of the minds created by an unambiguous offer of a guarantee by the United States and an unambiguous acceptance of that offer by the Enterprises' shareholders. See Fairholme, 26 F.4th at 1293 (stating that for a contract with the government to form, there must be an "unambiguous offer and acceptance"); accord Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1384 (Fed. Cir. 2019) (affirming a dismissal of a breach-of-contract claim under the plausibility standard because the plaintiff "did not plead facts sufficient to establish the government's intent to contract"). The discovery of nonpublic documents on the topic of an implicit guarantee by the United States is therefore irrelevant to defendant's challenge to this claim.

Finally, also regarding Count V, awards of prospective declaratory relief are beyond this court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a). See Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act does not provide independent jurisdiction over such claims for equitable relief." (citing United States v. King, 395 U.S. 1, 2-3 (1969))). Mr. Angel does not indicate that his discovery requests would address defendant's jurisdictional challenge to this aspect of Count V, and the court does not see how discovery could possibly alter its analysis regarding its jurisdiction to award declaratory relief.

In sum, Mr. Angel's motion for discovery, as it relates to Counts I, II, and V of the complaint, must be denied because the discovery sought therein is immaterial to the resolution of defendant's motion to dismiss.

### B. Discovery to Rebut Challenges to Count III

Mr. Angel's motion fares no better as it pertains to Count III of his complaint. The claim presented in Count III has three distinguishing features. First, Mr. Angel seeks declaratory relief as to the contract rights of the Enterprises' shareholders at the termination of the conservatorships. Compl. 28-29, 32. Second, Mr. Angel asserts that certain duties are imposed by law on a conservator. See id. ¶ 85 ("A conservator's duty is to operate, rehabilitate, and restore the financial health of the troubled institution."). Third, Mr. Angel relies on bankruptcy law to vindicate certain rights of the shareholders at the termination of the conservatorships:

> [T]he legal concepts of conservatorship law as well as federal insolvency law, including Title 11, require that termination of the conservatorship[s] must include Fannie Mae and Fred[d]ie Mac's belated effectuation of the Junior Preferred's dividend rights so that the conservatorship[s] do[] not result in a nonconsensual impairment of the Junior Preferred's contract rights and there are no statute of limitations constraints in determining whether the conservatorship[]s meet[] that requirement.

Id. ¶ 88 (citing 11 U.S.C. §§ 109, 1124).

As discussed above, defendant argues in its motion to dismiss that the court lacks jurisdiction over claims arising under bankruptcy law and to award prospective declaratory relief. Def.'s Mot. 25-27; accord Blodgett v. United States, 146 Fed. Cl. 104, 108 (2018) (noting that this court has no jurisdiction over claims arising under bankruptcy law). There is nothing in Mr. Angel's motion to obtain discovery that connects his requests for discovery with these two challenges to Count III. Indeed, the court cannot conceive of a discovery request that would address these two arguments that focus purely on the scope of this court's jurisdiction. Thus, no discovery is justified to rebut defendant's challenges to the claim in Count III of the complaint.

## C. Discovery to Rebut Challenges to Count IV

Mr. Angel also seeks discovery related to Count IV of the complaint, in which he asserts that the United States breached a settlement agreement with him that resolved his claims before this court. According to Mr. Angel, he extended his offer of settlement on June 10, 2021, "the words and conduct of Defendant's agents from June 2021 to January 2022 constituted an acceptance," and defendant breached the settlement agreement, by e-mail, on March 16, 2022. Compl. ¶¶ 92-93, 95. All of these events occurred during the pendency of Angel I.

In its motion to dismiss, defendant argues that this claim for breach of a settlement agreement is implausible. Def.'s Mot. 30-33. Defendant notes, in particular, that Mr. Angel has not proffered a document signed by both parties, nor has he identified the government official with requisite authority who signed such a document, or who authorized the settlement. Id. at 31-33. Defendant urges the court to dismiss Count IV for failure to state a claim upon which relief may be granted.

Mr. Angel's request for discovery related to the alleged settlement agreement is robust, and includes items such as Justice's administrative log for Angel I. Pl.'s Mot. 29. He provides this rationale for his request:

> The parties both agree that a proposed Angel I[] Settlement Agreement was sent to the Government. Where they differ is whether or not it was accepted. The only way to resolve the dispute is to review the facts upon which the Defendant relies in alleging that there was no meeting of the minds. This information is not publicly available, but rather is solely in the possession of the Government. Such discovery should include not only interrogatories but also the production of relevant e-mails and other communications of Government officials relating to the . . . Angel I[] Settlement Agreement. Such discovery might also include targeted depositions of officials with knowledge regarding the . . . Angel I[] Settlement Agreement.

Id. at 22. Mr. Angel also points to the fact that defendant's counsel consented to the attachment of a document that Mr. Angel identifies as the "Angel I[] Settlement Agreement" to a joint status report filed in Angel I. Id. at 26 n.24. That document is signed only by Mr. Angel and is undated. Joint Status Report Attach. 1 at 23-24, Angel I, No. 20-737C (Fed. Cl. Mar. 24, 2022).

-12-

Defendant argues that the proposed discovery is unnecessary because Mr. Angel, a party to the alleged settlement agreement and also counsel for that party, "is presumably . . . in possession of any communication that he might allege to have established an agreement." Def.'s Resp. 12. Defendant also contends that because Mr. Angel does not identify the official who authorized the alleged settlement, his breach claim is insufficiently pled and implausible. See id. at 11 (stating that in his complaint "Mr. Angel's vague allegations fail to plausibly allege facts that, if proven, would demonstrate that he agreed to a contract with a Government representative with actual authority to bind the Government in contract"), 12 ("Mr. Angel does not allege, either in his complaint or his motion for discovery, that any of these officials [with requisite authority] authorized settlement."). Mr. Angel did not respond to either of these arguments in his reply brief.

The court agrees with defendant that discovery seeking evidence of government approval of Mr. Angel's draft settlement agreement is irrelevant. For there to have been an unambiguous acceptance of the terms of the proposed agreement, Mr. Angel would necessarily have received a communication stating that an official with sufficient authority had accepted his offer and approved the settlement. See Fairholme, 26 F.4th at 1293-94 (stating that the formation of a contract with the government "requires:  (1) mutuality of intent to contract; (2) consideration; . . . (3) unambiguous offer and acceptance[; and] (4) the government representative whose conduct is relied upon [to] have actual authority to bind the government in contract"). Mr. Angel has not alleged that he received such a communication. Thus, his legal conclusion regarding contract formation is unsupported by a necessary factual allegation. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Any document that would rebut defendant's challenge to the plausibility of the claim in Count IV would necessarily be in Mr. Angel's possession. In addition, the discovery requested by Mr. Angel is speculative and overly burdensome. Because Mr. Angel's request for discovery with respect to Count IV of the complaint is entirely irrelevant to the resolution of defendant's motion to dismiss, it is denied.

## IV.  CONCLUSION

The court has considered all of the parties' arguments. To the extent not discussed herein, they are unpersuasive or unnecessary for resolving the issues currently before the court. The court **DENIES** Mr. Angel's motion for discovery because the discovery requested by Mr. Angel is irrelevant to the resolution of defendant's motion to dismiss. The court therefore **LIFTS** the stay of the briefing of defendant's motion to dismiss. Mr. Angel shall **FILE** his response to that motion **by no later than Tuesday, February 20, 2024**, with defendant's reply to follow pursuant to the rules of this court.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Senior Judge

-13-