# In the United States Court of Federal Claims

No. 23-800C

(Filed: February 21, 2024)

```
*************************************
JOSHUA J. ANGEL,                    *
                                    *
                    Plaintiff,      *
                                    *
        v.                          *
                                    *
THE UNITED STATES,                  *
                                    *
                    Defendant.      *
*************************************
```

Joshua J. Angel, New York, NY, for plaintiff.

Anthony F. Schiavetti, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Senior Judge

In this suit, plaintiff Joshua J. Angel asserts his own claims and those of a putative class against the United States. His claims are founded on the dividend rights of shareholders of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), or collectively, "the Enterprises." Defendant, relying on Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), moved to dismiss his claims for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. In response, Mr. Angel moved for leave to amend his complaint. The court stayed the briefing of defendant's motion to dismiss to consider Mr. Angel's request. As explained more fully below, the court denies Mr. Angel's motion because the proposed amendment of his complaint is futile.

### I. BACKGROUND

#### A. Fannie Mae and Freddie Mac Shareholders Stop Receiving Dividends

Mr. Angel, like many other plaintiffs who filed claims in this court, seeks compensation for changes to the benefits of owning stock in Fannie Mae and Freddie Mac, including but not limited to the loss of dividend payments, that occurred in the context of a government rescue of

the Enterprises.[1]  The United States Court of Appeals for the Federal Circuit ("Federal Circuit") addressed many of these claims in Fairholme Funds, Inc. v. United States, 26 F.4th 1274 (Fed. Cir. 2022), cert. denied, 143 S. Ct. 563, and cert. denied sub nom. Barrett v. United States, 143 S. Ct. 562, and cert. denied sub nom. Owl Creek Asia I, L.P. v. United States, 143 S. Ct. 563, and cert. denied sub nom. Cacciapalle v. United States, 143 S. Ct. 563 (2023).  As recounted by the Federal Circuit in that opinion:

> The Enterprises suffered devastating financial losses in 2008 when the national housing market collapsed.  In response, Congress enacted the Housing and Economic Recovery Act of 2008 (HERA).  HERA created the Federal Housing Finance Agency (FHFA), an independent agency tasked with regulating the Enterprises and (if necessary) stepping in as conservator or receiver.  12 U.S.C. §§ 4511, 4617.  HERA also contains a Succession Clause, which states that the FHFA "shall, as conservator or receiver . . . immediately succeed to [ ] all rights, titles, powers, and privileges of the [Enterprises], and of any stockholder . . . with respect to the [Enterprises] and the assets of the [Enterprises]."  Id. § 4617(b)(2)(A)(i).
>
>      With the consent of the Enterprises' boards of directors, the FHFA's Director placed the Enterprises into conservatorship in September 2008.  The FHFA Director then negotiated preferred stock purchase agreements (PSPAs) with the Department of Treasury (Treasury) in which Treasury agreed to allow the Enterprises to draw up to $100 billion in capital in exchange for:  (1) senior preferred non-voting stock having quarterly fixed-rate dividends and an initial liquidation preference of $1 billion and (2) warrants to purchase up to 79.9% of the common stock of each Enterprise at a nominal price.
>
>      FHFA and Treasury amended the terms of the original PSPAs in the years that followed. . . .  [The Third Amendment implemented] a "net worth sweep" under the PSPAs[, which] replaced the fixed-rate dividend formula with a variable one that required the Enterprises to make quarterly payments equal to their entire net worth, minus a small capital reserve amount.  The net worth sweep caused the Enterprises to transfer most, if not all, of their equity to Treasury, leaving no residual value that could be distributed to shareholders.

Id. at 1282-83 (alterations in first paragraph in original) (citations to appellate joint appendix omitted).  The Third Amendment to the PSPAs, which implemented the net worth sweep, was adopted on August 17, 2012.  Compl. ¶ 10.  Ultimately, the Federal Circuit ruled in Fairholme that the appellants' shareholder claims based on the net worth sweep could not proceed in this court.  26 F.4th at 1282.

---

[1] The facts recounted in this section are derived from the complaint and other matters as permitted by Rule 201, "Judicial Notice of Adjudicative Facts," of the Federal Rules of Evidence.

### B. Procedural Posture of Mr. Angel's Claims

Mr. Angel has pursued claims related to his shares in the Enterprises since 2018, proceeding both in the United States District Court for the District of Columbia and the United States Court of Federal Claims. See Angel v. United States ("Angel II"), 169 Fed. Cl. 224, 228-29 (recounting the dismissals of Mr. Angel's suits and his lack of success on appeal). The claims asserted by Mr. Angel in his current complaint, as in his prior suits, are founded on his dividend rights, as a holder of Junior Preferred shares in Fannie Mae and Freddie Mac, and on the fact that no dividends were declared or paid to holders of Junior Preferred shares from January 1, 2013, to the date his complaint was filed, June 1, 2023. Compl. ¶¶ 16-19. Mr. Angel represents that he "owns Junior Preferred Shares of both Fannie Mae and Freddie Mac, purchased after [the] Third Amendment enactment, in [an] amount in excess of $1 million face amount [sic]." Id. ¶ 46.

Mr. Angel's claims in the complaint are set forth in five counts, but the parties' current dispute focuses only on Count II. In this count, labeled "Illegal Extraction," Mr. Angel alleges that Treasury committed wrongful acts in conducting the net worth sweep, and/or the conservator for each of the Enterprises breached its fiduciary duty to the shareholders.[2] Id. ¶¶ 76-80. The court previously observed that Mr. Angel's "claim in Count II is difficult to define with any precision." Angel II, 169 Fed. Cl. at 229 n.2.

As previously noted, defendant moved to dismiss Mr. Angel's claims for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. Regarding Count II, defendant contends that this claim is untimely and that it is also barred by preclusion principles. Further, defendant notes that claims for illegal exaction and breach of fiduciary duty were rejected by the Federal Circuit in its Fairholme decision and requests that the court follow that precedent to dismiss Count II.

In response to defendant's motion to dismiss, Mr. Angel first filed a motion to obtain jurisdictional discovery. The court denied that motion because the discovery he sought was irrelevant to the challenges raised by defendant in its motion to dismiss. Id. at 236. Now Mr. Angel requests leave, under RCFC 15(a)(2), to amend his complaint.

Generally, Mr. Angel proposes to amend his complaint to delete a footnote on the topic of the litigation proceeds obtained by the Enterprises since the Third Amendment to the PSPAs, and to amend Count II to (1) state that litigation proceeds should benefit the shareholders of the Enterprises and (2) establish a distinction between a claim for illegal exaction and a separate claim for illegal extraction. Defendant argues in response that the proposed amendment is futile because the court would necessarily dismiss the claim in Count II even if it were revised in the manner proposed by Mr. Angel.

Briefing is now complete and neither party requested oral argument. Mr. Angel's motion is thus ripe for resolution.

---

[2] Mr. Angel acknowledges that this count of his complaint "conflate[s] claims of illegal exaction with claims of illegal extraction." Pl.'s Mot. 2.

## II. LEGAL STANDARD

Pursuant to RCFC 15(a)(2), the "court should freely give leave [to amend a complaint] when justice so requires." The decision to give or deny leave to amend a complaint is within the discretion of the trial court. Foman v. Davis, 371 U.S. 178, 182 (1962). The court's "discretion should be exercised liberally to permit such amendments." Mitsui Foods, Inc. v. United States, 867 F.2d 1401, 1403 (Fed. Cir. 1989). However, "[c]ourts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996); accord Mitsui Foods, 867 F.2d at 1403-04 & n.4 (stating that "'futility of amendment' may justify the denial of a motion for leave to amend" (quoting Foman, 371 U.S. at 182)).

## III. ANALYSIS

The court begins with two threshold issues. First, Mr. Angel contends that because no new claim is added in the proposed amended complaint, the proper standard of review is not the one set forth above, where futility is enough to bar amendment, but one in which defendant must show prejudice. See Pl.'s Reply 3 ("The key factor courts examine when considering an amendment that only adds facts and does not seek to assert a new claim is not futility; it is prejudice."). It is not necessary to decide whether Mr. Angel correctly characterizes his proposed amendment of Count II as merely adding facts, as opposed to adding a claim. Compare Compl. ¶ 19 & n.6 (indicating that litigation proceeds were "not complained of"), with Proposed Am. Compl. ¶ 79(b) (describing Treasury's actions as an illegal extraction of the shareholders' "property rights in certain litigation proceeds"). The test applicable in this court is that futility, alone, is enough to bar amendment if the amended claim would not survive a motion to dismiss. Mitsui Foods, 867 F.2d at 1403-04 (affirming the denial of a motion for leave to amend a complaint that sought to add "an additional prayer for relief," which raised "an issue that [wa]s separate and distinct from the issue" already before the court, because even if leave to amend were granted judgment would still be entered for the defendant); accord Marchena v. United States, 128 Fed. Cl. 326, 330 (2016) (rejecting the proposed amendment of a complaint as futile even though the government did not argue that it was prejudiced by the proposed amendment and the plaintiff merely wished "to add details to factual allegations in the original complaint"), aff'd mem., 702 F. App'x 988 (Fed. Cir. 2017).

Second, in a footnote in his reply brief, Mr. Angel argues that his motion should also be considered under RCFC 15(d), "Supplemental Pleadings," because the amendment he proposes was triggered by a press release issued after he filed this suit:

> On August 14, 2023, the United States Attorney for the Eastern District [of] New York issued a press release stating that his office had finalized the disposition of $36 billion in . . . litigation proceeds recovered [by the Enterprises] from 2013 through 2023. [Mr. Angel] contends that this directly impacts his already-asserted claims and his proposed amendments seek to add allegations concerning this development. As an allegation of new facts arising

>    after the earlier pleading, these allegations qualify for amendment as a
>    supplemental pleading pursuant to Rule 15(d).

Pl.'s Reply 4 n.2.  There are two reasons why this argument is not persuasive.  As a matter of procedural fairness, arguments raised for the first time in a reply brief are waived and the court need not consider them.  E.g., United States v. Ford Motor Co., 463 F.3d 1267, 1276 (Fed. Cir. 2006); Novosteel SA v. United States, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002).  In addition, even if Mr. Angel were to rebrand his motion as a motion for leave to file a supplemental pleading, this type of motion, too, may be denied if futile.  See, e.g., Harris v. Garner, 216 F.3d 970, 983-84 (11th Cir. 2000) ("If an amendment or supplement to the pleadings is offered [that is irrelevant to the legal contention for which it is proposed], that amendment or supplement should be denied as futile."); Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995) ("Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, [a Rule 15(d)] motion should be freely granted."); K-Con Bldg. Sys., Inc. v. United States, 131 Fed. Cl. 275, 315-20 (2017) (denying a request to supplement a complaint because the plaintiff's claim, if supplemented as proposed, would not survive a motion to dismiss).

The court turns now to Mr. Angel's proposed amendment of Count II.  Count II in the current version of Mr. Angel's complaint is not a fresh topic, since essentially the same claim was presented, and dismissed by the court, in an earlier suit brought by Mr. Angel.  See Angel v. United States ("Angel I"), 165 Fed. Cl. 453, 461-67, 469-70 (2023) (dismissing a claim indistinguishable from the claim in Count II of the current complaint as untimely and otherwise not within this court's jurisdiction and, in the alternative, for failure to state a claim upon which relief can be granted).  Rather than appealing the court's decision, Mr. Angel included essentially the same claim in his current complaint.  It should not be a surprise to him, therefore, if the court dismisses this count once defendant's motion to dismiss, which has been pending since October 13, 2023, has been fully briefed.[3]

To avoid being rejected for futility, Mr. Angel's proposed amendment of Count II must correct all of the defects that doomed its predecessor claim in Angel I and it must also withstand defendant's argument that Mr. Angel is precluded, by the court's judgment in Angel I, from raising the same issues and claims in this suit as he did before.  To simplify the inquiry, however, it is enough to test the amended Count II that Mr. Angel proposes for timeliness.  Unless his proposed Count II presents a timely claim, the proposed amendment of Count II is futile.

If the claim in Mr. Angel's proposed Count II accrued more than six years before he filed this suit on June 1, 2023, it is barred by the court's statute of limitations, 28 U.S.C. § 2501.  In Angel I, the court held that a similar claim accrued in early 2013, at the latest.  165 Fed. Cl. at 464.  The same accrual analysis applies here.

Mr. Angel attempts to justify the amendment of Count II by stating that it is based "at least in part on newly discovered evidence."  Pl.'s Mot. 2.  In his view, this new evidence of

---

[3] The court will not stay briefing on defendant's motion for a third time.

litigation proceeds creates an "open question" for the court to consider. Id. at 4. Mr. Angel appears to argue that if some litigation proceeds were recovered by the Enterprises after June 1, 2017, a claim related to the nondistribution of these proceeds in shareholder dividends would not be barred by the court's six-year statute of limitations, see Proposed Am. Compl. ¶ 79(b) (founding the proposed amended illegal extraction claim on $11 billion of litigation proceeds recovered by the Enterprises from June 1, 2017, through December 31, 2023), ¶ 80 (stating that Treasury's actions made "Defendant responsible to effect [sic] sums which it illegally extracted within six (6) years of complaint filing payable with interest").

The problem with this proposed foundation for Mr. Angel's illegal extraction claim is that the nondistribution of litigation proceeds began much earlier. According to Count II of the proposed amended complaint, "Treasury engaged in wrongful acts of illegal exaction and extraction in its administrative conduct of the conservatorship[s]," and these wrongful acts began in the first quarter of 2013. Id. ¶ 79. The court previously held that Mr. Angel's claims related to the net worth sweep accrued at the time the shareholders stopped receiving dividends, by early 2013 at the latest, and that his claims did not benefit from the continuing claim doctrine. Angel I, 165 Fed. Cl. at 465-66. The same holding applies here. The nondistribution of litigation proceeds is just one type of equity that the Enterprises could not distribute through dividends once the net worth sweep was implemented. Any claim related to litigation proceeds accrued in early 2013, more than six years before Mr. Angel filed his complaint, and is time-barred.

Thus, Mr. Angel's proposed deletion of footnote six of the complaint, which disavowed any claim for litigation proceeds, and his proposed insertion in Count II of a reference to litigation proceeds recovered by the Enterprises from June 1, 2017, through December 31, 2023, must be denied as futile. As for Mr. Angel's additional proposed changes to the text and heading of Count II, which he describes as providing clarification of a claim that "conflated claims of illegal exaction with claims of illegal extraction," Pl.'s Mot. 2, his proposed rewrite does nothing to alter the fact that the claim or claims in his proposed amended Count II accrued more than six years before Mr. Angel filed his complaint. These additional proposed changes to the complaint, therefore, are also futile.

### IV.  CONCLUSION

The court has considered all of the parties' arguments. To the extent not discussed herein, they are unpersuasive or unnecessary for resolving the issues currently before the court. The court **DENIES** Mr. Angel's motion for leave to amend the complaint because the proposed amendment is futile. Mr. Angel shall **FILE** his response to defendant's motion to dismiss **by no later than Friday, March 22, 2024**, with defendant's reply to follow pursuant to the rules of this court.

IT IS SO ORDERED.

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Senior Judge
